1
 2025 CO 14 In Re The People of the State of Colorado, In the Interest of Juvenile: J.D. No. 24SA193
Supreme Court of Colorado, En Banc
April 14, 2025
 
          
 Original Proceeding Pursuant to C.A.R. 21 El Paso County
 District Court Case Nos. 23JD115, 23JD126, 23JD132, 23JD222,
 23JD238, 23JD722 & 23JD726 Honorable Linda M. Billings
 Vela, Judge Honorable Diana May, Judge
 
 
          Order
 Discharged
 
 
          
 Attorneys for the People of the State of Colorado: Michael J.
 Allen, District Attorney, Fourth Judicial District Rachael
 Powell, Chief Deputy District Attorney Tanya A. Karimi,
 Deputy District Attorney Colorado Springs, Colorado
 
 
          
 Attorneys for J.D.: Megan A. Ring, Public Defender Amanda G.
 Candileri, Deputy Public Defender Colorado Springs, Colorado
 
 
          
 Attorneys for Respondent El Paso County District Court:
 Philip J. Weiser, Attorney General Joseph A. Peters, Senior
 Assistant Attorney General Denver, Colorado
 
 2
 
          
 Attorneys for Amicus Curiae Colorado Department of Human
 Services: Philip J. Weiser, Attorney General, Ann H. Pogue,
 First Assistant Attorney General Sarah Richelson, Second
 Assistant Attorney General Denver, Colorado
 
 
          
 JUSTICE BOATRIGHT delivered the Opinion of the Court, in
 which CHIEF JUSTICE MÁRQUEZ, JUSTICE HART, and JUSTICE
 SAMOUR joined.
 
 3
 
          
 OPINION
 
 
          
 BOATRIGHT JUSTICE
 
 
          ¶1
 In this original proceeding, we consider whether the
 Department of Human services ("Department") had the
 authority to reevaluate the competency of J.D., a juvenile
 defendant. J.D. argues that the juvenile court should not
 have accepted and relied upon the Department's
 restoration evaluation because the Department lacked the
 authority to complete such an evaluation absent a court order
 under section 19-2.5-704(2)(c), C.R.S. (2024). The People and
 the district court[1] argue that evaluating competency is part
 of providing restoration services and, therefore, a separate
 court order to conduct such an evaluation is unnecessary.
 
 
          ¶2
 We agree with the People and the district court. Section
 19-2.5-704(2)(b) expressly designates the Department as
 "the entity responsible for the oversight of restoration
 education and coordination of services necessary to
 competency restoration." Applying the plain language of
 the statute, we hold that restoration evaluations are
 included in "services necessary to competency
 restoration." Hence, the Department may conduct such
 evaluations without a court order under subsection (2)(c).
 Because the Department's restoration evaluation was
 proper, we discharge the order to show cause.
 
 4
 
          I.
 Facts and Procedural History
 
 
          ¶3
 J.D. faces a series of charges across multiple cases. After
 receiving his initial charges, J.D. filed a motion
 challenging his competency to proceed, and the juvenile court
 ordered the Department to complete an in-custody competency
 evaluation. Following this evaluation, the court found that
 J.D. was incompetent but restorable and ordered outpatient
 restoration services. The following month, the People again
 charged J.D. with committing several delinquent acts. The
 court extended its finding of incompetency to all seven cases
 and ordered the Department to oversee and coordinate
 inpatient restoration services. The order further required
 the Department to periodically provide the court with status
 reports, including documentation of the restoration services
 provided, J.D.'s participation in those services, and his
 progress toward competency.
 
 
          ¶4
 Six months later, at the Department's request, J.D. met
 with a Department evaluator to reassess his competency. After
 that evaluation, the Department concluded that J.D. had been
 restored to competency and reported its finding to the court.
 In response, J.D. moved to strike the Department's
 report, arguing that the Department lacked the authority to
 evaluate his competency without a court order under section
 19-2.5-704(2)(c).
 
 
          ¶5
 The juvenile court denied J.D.'s motion, finding that the
 Department had the authority to conduct a restoration
 evaluation on its own initiative under
 
 5
 
 subsection (2)(b) because "[a] restoration evaluation,
 by its very nature, is a service necessary to competency
 restoration." The court reasoned that although
 subsection (2)(c) permits the court to order a
 restoration evaluation, that subsection "in no way
 limits the ability of the Department to conduct an evaluation
 of its own volition if and when it deems such an evaluation
 to be appropriate during the course of restoration
 treatment." After holding a hearing, and considering the
 Department's report, the court found that J.D. had been
 restored to competency.
 
 
          ¶6
 J.D. then petitioned this court for relief under C.A.R. 21,
 arguing that restoration evaluations are not services
 necessary to competency restoration; meaning, the Department
 lacked the authority to conduct such an evaluation of J.D.
 absent a court order under subsection (2)(c). We issued an
 order to show cause.
 
 
          II.
 Original Jurisdiction
 
 
          ¶7
 Original relief under C.A.R. 21 is an extraordinary remedy
 and appropriate only where no other adequate remedy is
 available. C.A.R. 21(a)(2). Under such circumstances, we will
 generally elect to exercise our original jurisdiction if the
 petition raises an issue of first impression that is of
 significant public importance. Young v. Hodges, 2014
 CO 1, ¶ 7, 318 P.3d 458, 460.
 
 
          ¶8
 The exercise of our original jurisdiction is warranted in
 this case because there is no other adequate remedy available
 to J.D. The normal appellate process
 
 6
 
 is inadequate because the harm resulting from an erroneous
 finding of competency necessarily occurs at the time of such
 finding, regardless of any ruling on appeal. See,
 e.g., In re People in Int. of A.T.C., 2023 CO
 19, ¶ 10, 528 P.3d 168, 171 (invoking our original
 jurisdiction when there was a risk that the juvenile would be
 forced to proceed while incompetent); § 19-2.5-702(2),
 C.R.S. (2024) ("A juvenile must not be tried or
 sentenced if the juvenile is incompetent to proceed.").
 
 
          ¶9
 Furthermore, this case presents an issue of first impression
 that is of significant public importance. We have not yet
 determined whether a "restoration evaluation" is
 included in "restoration services"[2]-a term undefined
 by Colorado statute-and thus within the discretion of the
 Department under section 19-2.5-704(2)(b). The issue raised
 has ramifications for juveniles throughout the state who are
 subjected to competency procedures. For these reasons, we
 elect to resolve this issue now.
 
 
          III.
 Analysis
 
 
          ¶10
 We begin by discussing the applicable standard of review and
 the rules of statutory construction. We then turn to the
 statutory framework for juvenile competency proceedings and,
 applying the plain language of the statute, we hold
 
 7
 
 that restoration evaluations are included in "services
 necessary to competency restoration," meaning that the
 Department may conduct such evaluations without a court order
 under section 19-2.5-704(2)(c). Accordingly, we conclude that
 the juvenile court properly accepted and considered the
 Department's evaluation in finding J.D. to be restored to
 competency. We therefore discharge the order to show cause.
 
 
          A.
 Standard of Review and Rules of Statutory Construction
 
 
          ¶11
 Whether the Department has discretion to conduct a
 restoration evaluation on its own initiative turns on our
 interpretation of section 19-2.5-704, which sets forth the
 procedures following an initial finding of competency or
 incompetency. Statutory interpretation is a question of law,
 which we review de novo. People v. Iannicelli, 2019
 CO 80, ¶ 19, 449 P.3d 387, 391. In construing a statute,
 our principal purpose is to determine and give effect to the
 intent of the legislature. Id. We begin this inquiry
 by looking to the language of the statute, giving its words
 and phrases their plain and ordinary meanings. Id.
 
 
          ¶12
 In doing so, we seek "to effectuate the purpose of the
 legislative scheme," considering the statute as a whole
 and "giving consistent, harmonious, and sensible effect
 to all of its parts." Id. at ¶ 20, 449
 P.3d at 391. We avoid interpretations that would lead to
 illogical or absurd results. Id.
 
 8
 
          ¶13
 Where the statute is clear and unambiguous, we need look no
 further. Carrera v. People, 2019 CO 83, ¶ 18,
 449 P.3d 725, 729. We apply the language of the statute as
 written, and our inquiry ends. Martinez v. People,
 2020 CO 3, ¶ 9, 455 P.3d 752, 755.
 
 
          B.
 Substance of the Juvenile Competency Statute
 
 
          ¶14
 Colorado's juvenile competency statute establishes a
 juvenile-specific definition of incompetency to proceed that
 focuses on the juvenile's understanding of the legal
 process and ability to meaningfully consult with their
 attorney. § 19-2.5-701.5(5), C.R.S. (2024). Juveniles
 who are found incompetent to proceed may not be tried or
 sentenced. § 19-2.5-702(2). When the issue of competency
 is first raised, the court makes a preliminary finding of
 competence or incompetence. § 19-2.5-703(1), C.R.S.
 (2024).
 
 
          ¶15
 If the court "feels that the information available to it
 is inadequate for making such a finding," id.,
 it must order a competency evaluation, which includes an
 opinion as to whether the juvenile is competent or
 incompetent to proceed, § 19-2.5-703(4)(c). If the
 juvenile is deemed incompetent, then the competency
 evaluation must include a recommendation as to whether there
 is a likelihood that the juvenile may be restored to
 competency. Id. The competency evaluation may also
 identify appropriate services to accomplish restoration.
 Id.
 
 9
 
          ¶16
 Section 19-2.5-704 establishes the procedures applicable
 after a juvenile's initial competency status has been
 determined. Section 19-2.5-704(2) applies if the court finds
 that the juvenile is incompetent but restorable. In that
 scenario, subsection (2)(a) directs the court to stay the
 proceedings, order restoration services, and hold regular
 progress review hearings. § 19-2.5-704(2)(a). Subsection
 (2)(b) then specifies that the Department is responsible for
 "the oversight of restoration education and coordination
 of services necessary to competency restoration." §
 19-2.5-704(2)(b). Finally, subsection (2)(c) provides that
 the court or a party may raise the need for a restoration
 evaluation of a juvenile's competency. §
 19-2.5-704(2)(c). Once the issue is raised, the court must
 order such evaluation when three factors are met:
 
 
 [(1)] there is credible information that the juvenile's
 circumstances have changed, [(2)] the court cannot fairly
 determine whether the juvenile has been restored to
 competency or will be able to be restored to competency in
 the reasonably foreseeable future, and [(3)] the cause for a
 restoration evaluation outweighs the negative impact of a
 restoration evaluation upon the juvenile and any delay that
 will be caused by a restoration evaluation.
 
 
 Id.
 
 
          ¶17
 The court may, when appropriate, order a hearing to determine
 whether a juvenile has been restored to competency, or it may
 make such determination during a routine review hearing.
 §§ 19-2.5-705 to -706(1), C.R.S. (2024). A
 
 10
 
 mandatory restoration hearing is triggered, however, when
 there has been a report filed by a qualified competency
 evaluator. § 19-2.5-705(1), C.R.S. (2024).
 
 
          ¶18
 When the court finds that the juvenile has been restored to
 competency, it resumes or recommences proceedings. §
 19-2.5-706(1), C.R.S. (2024).
 
 
          C. The
 Plain Language of Section 19-2.5-704 Authorizes the
 Department to Perform Competency Evaluations
 
 
          ¶19
 The key statute here is section 19-2.5-704, which governs
 when the court deems a juvenile incompetent but restorable.
 Specifically, the issue involves the interplay between
 subsections (2)(b) and (2)(c). Section 19-2.5-704(2)(b)
 provides that "the department is the entity responsible
 for the oversight of restoration education and coordination
 of services necessary to competency
 restoration,"[3]while subsection (2)(c) sets forth the
 framework for court-ordered restoration evaluations.
 
 
          ¶20
 The legislature did not define "services necessary to
 competency restoration" or "restoration
 services." J.D. argues that these services do not
 include restoration evaluations, meaning that section
 19-2.5-704(2)(b) does not give the Department the authority
 to conduct such evaluations. Instead, he contends that the
 Department may only perform a restoration evaluation if a
 court
 
 11
 
 orders it to do so under section 19-2.5-704(2)(c), which
 requires the court to make several findings before ordering a
 restoration evaluation and provides for the possibility of a
 hearing on the subject.
 
 
          ¶21
 In support of his contention, J.D. notes that the legislature
 elected not to define "restoration services," but
 it did define "restoration evaluation."
 See § 19-2.5-701.5(6). Moreover, while the
 definition of restoration evaluation refers to
 "court-ordered evaluations," it does not mention
 restoration services. See id. J.D. further notes
 that the definition of "restoration progress review
 hearing" does reference examples of
 "restoration to competency education and other
 applicable services," yet fails to list restoration
 evaluations. See § 19-2.5-701.5(7). He thus
 contends that the legislature purposefully distinguished
 between restoration services and restoration evaluations.
 Finally, J.D. relies on the general statutory scheme for
 support, positing that restoration services result
 from the findings of the initial court-ordered competency
 evaluation and do not include the competency evaluation
 itself.
 
 
          ¶22
 J.D.'s argument hinges largely on his claim that nothing
 in the juvenile competency statute affirmatively provides for
 the Department to conduct a restoration evaluation beyond the
 procedure laid out in section 19-2.5-704(2)(c). Yet section
 19-2.5-704(2)(b) expressly delegates to the Department
 "oversight" of restoration education and
 "coordination" of competency restoration services.
 
 12
 
 Integral to this mandate is continuous monitoring and
 adjustment so as to appropriately tailor restoration
 education and other treatment to the juvenile-in other words,
 evaluating their progress toward restoration.
 Indeed, we have previously acknowledged that competency
 evaluations have both diagnostic and treatment purposes.
 Zapata v. People, 2018 CO 82, ¶ 36, 428 P.3d
 517, 525.
 
 
          ¶23
 Contrary to J.D.'s position, the definition of
 "[r]estoration evaluation"-"an evaluation
 conducted by a competency evaluator to determine if the
 juvenile has become competent to proceed or will be able to
 be restored to competency in the reasonably foreseeable
 future," § 19-2.5-701.5(6)-bolsters our reading
 that restoration services include such evaluations. By
 J.D.'s own admission, a restoration evaluation is a means
 by which to assess a juvenile's progress toward
 competency and to acquire new insights as to the prognosis
 for restoration. For the Department to effectively coordinate
 services designed to restore the juvenile to competency-i.e.,
 to provide restoration services-it must be able to monitor
 
 13
 
 the evolution of the juvenile's competency status.
 Restoration evaluations, by their very definition, provide a
 mechanism for doing so.[4]
 
 
          ¶24
 In assigning the Department responsibility over restoration
 services, the legislature intended that the Department be
 able to independently and continuously evaluate juveniles
 receiving such services in its care. A juvenile's
 competency status is not static-as demonstrated in a finding
 of incompetent but restorable. In fact, the statute
 explicitly provides for additional evaluation and progress
 review throughout the course of restoration services.
 See § 19-2.5-704(2)(a) (requiring courts to
 periodically hold "restoration progress review
 hearing[s]" following an order for restoration
 services). For a court to meaningfully review a
 juvenile's progress toward restoration, it must be
 informed of the juvenile's current competency status. And
 for the Department to provide such information, it must be
 able to evaluate the juvenile's competency.
 
 14
 
          ¶25
 Moreover, section 19-2.5-704(2)(a) requires that the
 provision of restoration services "occur in a timely
 manner." To require the Department to seek a court order
 every time it sought to evaluate a juvenile's progress
 toward restoration would frustrate this legislative
 directive.
 
 
          ¶26
 Finally, section 19-2.5-705(1) requires the court to order a
 restoration to competency hearing when a competency evaluator
 "files a report certifying that the juvenile is
 competent to proceed." Common sense dictates that any
 such report would inform the court of the juvenile's
 current competency status-information gleaned through a
 restoration evaluation. Yet, the statute does not require a
 court order before filing such a report, suggesting that the
 Department may conduct evaluations absent a court
 order.[5]
 
 
          ¶27
 Accordingly, we conclude that the Department's
 responsibility to provide restoration services under
 section 19-2.5-704(2)(b) necessarily includes the authority
 to perform restoration evaluations.
 
 15
 
          IV.
 Application
 
 
          ¶28
 Here, the Department conducted an evaluation reassessing
 J.D.'s competency and filed a report with the court
 opining that he was competent to proceed, which J.D.
 subsequently moved to strike from the record. The juvenile
 court found that the Department's statutory obligation to
 provide restoration services allowed it to reevaluate
 J.D.'s competency, and it thus denied the motion to
 strike. The juvenile court then held a hearing and, based on
 the Department's report, made a finding of competency.
 
 
          ¶29
 Because we hold that restoration evaluations are included in
 "services necessary to competency restoration,"
 section 19-2.5-704(2)(b) permits the Department to conduct
 such evaluations on its own initiative. Thus, the juvenile
 court properly denied the motion to strike and properly found
 that J.D. had been restored to competency.
 
 
          V.
 Conclusion
 
 
          ¶30
 For the foregoing reasons, we discharge the order to show
 cause.
 
 
          
 JUSTICE BERKENKOTTER concurred in the judgment.
 
 
          
 JUSTICE GABRIEL, joined by JUSTICE HOOD, dissented.
 
 16
 
          
 JUSTICE BERKENKOTTER, concurring in the judgment.
 
 
          ¶31
 I agree with the dissent that the Colorado Department of
 Human Services ("the Department") lacks the
 authority to conduct a restoration evaluation absent a court
 order that explicitly allows it to do so. Specifically, I
 agree that the plain meaning of "restoration
 evaluation," a term that is defined by section
 19-2.5-701.5(6), C.R.S. (2024), does not include
 "restoration services." Dis. op. ¶ 25.
 Instead, section 19-2.5-701.5(6) explicitly defines a
 "[r]estoration evaluation" as a "court-ordered
 evaluation[]."
 
 
          ¶32
 Nonetheless, the majority concludes that the Department is
 authorized to conduct restoration evaluations because they
 are helpful in determining a juvenile's progress toward
 competency. I am not persuaded. The question presented here
 is one of legal authority, not helpfulness. And it is the
 court, subject to the important guardrails I describe
 below-not the Department-that the General Assembly entrusted
 with this authority.
 
 
          ¶33
 I additionally agree with the dissent that the plain meaning
 of section 19-2.5-704(2)(c), C.R.S. (2024), comports with the
 overarching scheme of the juvenile competency statutes, which
 vests the juvenile court and the Department with very
 different responsibilities. Dis. op. ¶ 31. As we
 observed in People in Interest of A.C., 2022 CO 49,
 ¶ 13, 517 P.3d 1228, 1234, these statutes require
 juvenile judges to actively manage juvenile competency
 matters. To that
 
 17
 
 end, as the dissent explains, Dis. op. ¶ 31, it is the
 court that is authorized to order competency evaluations,
 § 19-2.5-703(1), C.R.S. (2024); to decide how competency
 evaluations are to be conducted, § 19-2.5-703(4)(a); to
 explain what specific restoration services are to be
 provided, § 19-2.5-704(2)(a); to order restoration
 evaluations, § 19-2.5-704(2)(c); and to hold restoration
 to competency hearings, § 19-2.5-705(1), C.R.S. (2024).
 
 
          ¶34
 The General Assembly also charged juvenile courts with
 ensuring the restoration process proceeds apace by holding
 restoration progress review hearings every thirty-five days
 if the juvenile is in custody and every ninety days if they
 are not. § 19-2.5-704(2)(a). Additionally, the court is
 charged with considering whether the restoration services are
 being provided in the least restrictive environment possible.
 Id. And, of course, it is the court that ultimately
 decides if a juvenile has been restored to competency.
 
 
          ¶35
 The Department's role when it comes to juvenile
 competency restoration, while extremely important, is far
 more limited. As noted, it is tasked with overseeing the
 restoration education ordered by the court and coordinating
 the services necessary for competency restoration. §
 19-2.5-704(2)(b). Additionally, the Department may be
 required to file regular reports regarding the provision of
 those services with the court. These reports are essential to
 the court's ability to
 
 18
 
 exercise its oversight responsibilities with respect to
 juveniles whom the court has determined can be restored to
 competency.
 
 
          ¶36
 When the legislature amended the juvenile competency statute
 in 2023 to add section 19-2.5-704(2)(c), it made explicit the
 juvenile court's authority to order restoration
 evaluations. The legislature did this in response to this
 court's decision in People in Interest of
 B.B.A.M., 2019 CO 103, 453 P.3d 1161, and Chief Justice
 Boatright's concurrence, joined by Justice Hart, in
 A.C. [1] The concurrence urged the
 legislature to clarify the juvenile competency statutes by
 making the juvenile court's authority to order
 restoration evaluations and second evaluations explicit.
 A.C., ¶¶ 37-38, 517 P.3d at 1238
 (Boatright, C.J., specially concurring). Importantly,
 however, the legislature imposed significant guardrails on
 that
 
 19
 
 authority: It adopted a balancing test that expressly
 requires the court to consider the negative impact of any
 restoration evaluation requested before authorizing the
 Department to conduct the evaluation. To that end, the court
 shall order a restoration evaluation only if it is satisfied
 that
 
 
 there is credible information that the juvenile's
 circumstances have changed, the court cannot fairly determine
 whether the juvenile has been restored to competency or will
 be able to be restored to competency in the reasonably
 foreseeable future, and the cause for a restoration
 evaluation outweighs the negative impact of a restoration
 evaluation upon the juvenile and any delay that will be
 caused by a restoration evaluation.
 
 
 § 19-2.5-704(2)(c) (emphasis added).
 
 
          ¶37
 One problem with the majority opinion is that it fails to
 account for the General Assembly's explicit direction
 that the juvenile court consider the potential negative
 impact of each and every restoration evaluation on each and
 every juvenile involved in the restoration process. In the
 Department's and the majority's telling, restoration
 evaluations are nothing more than a harmless tool to assess a
 juvenile's progress toward restoration. This view is at
 odds with the General Assembly's direction. Even more
 problematic, by emphasizing these evaluations as a tool to
 assess progress, the Department and the majority suggest that
 it would be proper for juveniles to be routinely subjected to
 repeated evaluations without any consideration of their
 potential negative impact or oversight by the court.
 
 20
 
          ¶38
 The majority's view aligns with the Department's
 sweeping and ill-founded assertion in its amicus brief that
 "the negative impact of a restoration evaluation is
 minimal." Brief for the Colorado Department of Human
 Services as Amicus Curiae Supporting Respondent, at 8, In
 Re People in Int. of J.D., No. 24SA193 (2024).
 This statement reflects an alarming disregard, in my view, of
 the General Assembly's unambiguous direction: The
 negative impact, if any, of a restoration evaluation must be
 considered in every instance on a case-by-case basis. The
 Department's suggestion that the negative impact of a
 restoration evaluation is always minimal calls into question
 whether it fully understands the purpose of section
 19-2.5-704(2)(c) and illuminates the wisdom of the General
 Assembly's approach.
 
 
          ¶39
 Let me be clear, I have no doubt that restoration evaluations
 are a helpful tool in many situations, especially in those
 cases involving juveniles who require medication, rather than
 a basic civics education, to be restored. A.C.,
 ¶¶ 18-20, 517 P.3d at 1235. And I acknowledge that
 in the face of an objection, it will take time to allow the
 parties and the Department to weigh in based on the section
 19-2.5-704(2)(c) balancing test. But concerns about
 efficiency in a vacuum miss the mark: When it comes to
 restoration evaluations, a court must apply the balancing
 test, which considers, among other things, the impact of the
 evaluation on the juvenile-not the Department's
 convenience.
 
 21
 
          ¶40
 I do not know how to square the majority's expansive view
 of the Department's authority, which seems to have no
 limits, with the very specific limits the General Assembly
 imposed in section 19-2.5-704(2)(c). It is utterly illogical,
 in my view, to conclude that the General Assembly charged
 juvenile courts with applying this balancing test but placed
 absolutely no guardrails on the Department to protect
 juveniles from the potential negative impact of repeated
 evaluations by the Department. Put more simply, I do not read
 these statutes to suggest that the legislature intended the
 Department to be the only check on the Department.
 
 
          ¶41
 We need not, in my view, consider the legislative history of
 section 19-2.5-704(2)(c) as its meaning is obvious. A review
 of that history is, nonetheless, illuminating, given the
 testimony describing the balancing test in section
 19-2.5-704(2)(c) as establishing guardrails for when
 restoration evaluations may occur. Hearing on H.B. 1012
 before the H. Judiciary Comm., 74th Gen. Assemb., 1st Sess.
 (Jan. 24, 2023) (Mr. James Karbach, legislative liaison for
 the Office of the State Public Defender, testified that
 "this law brings clarity in defining [restoration
 evaluations], explains what they are much better, . . . has a
 balancing test for when they should be reordered, and allows
 a party to weigh whether or not harm will come to the child
 and whether or not enough has changed to really warrant use
 of that resource.") (Ms. Katie Hecker, an attorney from
 the Office of
 
 22
 
 the Child's Representative and a member of the advisory
 task force that drafted H.B. 1012, testified that first among
 the bill's benefits was that "as written, it
 establishes guardrails around when invasive reevaluations can
 occur.").
 
 
          ¶42
 But what about section 19-2.5-704(2)(b), the provision the
 majority leans on to conclude that the Department has the
 authority to conduct restoration evaluations without a court
 order? Notably, it has remained substantively unchanged since
 2017. See § 19-2-1303(2), C.R.S. (2017) (This
 statute was relocated in 2021 to section 19-2.5-704(2)(b).
 See Ch. 136, sec. 2, § 19-2.5-704(2)(b), 2021
 Colo. Sess. Laws 557, 613.). And while the Department now
 takes the position in its amicus brief that a restoration
 evaluation is a restoration service, this is a significant
 pivot from its position in 2022 in A.C. The
 litigation in A.C. arose after the Department
 asserted that it could not opine about restoration to
 competency or progress toward such restoration unless the
 court ordered an evaluation to determine if the
 juvenile, A.C., had been restored to competency. ¶ 4,
 517 P.3d at 1232. If section 19-2.5-704(2)(b) allows the
 Department to conduct restoration evaluations as part of its
 provision of restoration services, why did it ask the court
 for an order allowing it to do so? The Department's
 argument in this case conflicts with the interpretation of
 section 19-2.5-704(2)(b) that it advanced as recently as
 2022.
 
 23
 
          ¶43
 This is all to say that I agree with the dissent that the
 juvenile court erred and that the Department lacks the
 authority to conduct a restoration evaluation absent a court
 order that explicitly allows it to do so.
 
 
          ¶44
 I write separately to concur in the judgment because I do not
 believe the appropriate remedy when the Department conducts a
 restoration evaluation without first obtaining a court order
 is to automatically strike the restoration evaluation. I
 share the dissent's concern in the sense that an
 unauthorized restoration evaluation is a bell that cannot be
 unrung. Having said that, the balancing test set out in
 section 19-2.5-704(2)(c) is a benefit conferred by statute;
 it is not a constitutional right. And to my mind, if a
 restoration evaluation is mistakenly conducted, and the
 juvenile objects and asks the court to strike the evaluation,
 the best recourse is to have the juvenile court apply the
 balancing test after the fact.
 
 
          ¶45
 If the court determines, after hearing from the parties and
 the Department, that it would-on balance-have allowed the
 evaluation, the court should deny the motion to strike the
 evaluation. If the court determines, after hearing from the
 parties and the Department, that it would not-on balance-have
 allowed the evaluation, then it should grant the motion to
 strike. This approach most closely honors the concerns
 expressed by the General Assembly, tailors the consequences
 of a mistaken evaluation to the facts of the case, and
 recognizes that the juvenile
 
 24
 
 court is in the best position to make this determination. It
 also allows the juvenile court to consider if the challenged
 restoration evaluation was a mistake or part of a larger
 pattern of conduct that requires a different kind of
 remedy.[2]
 
 
          ¶46
 It is true here that J.D. did not have the benefit of the
 court contemporaneously applying the balancing test set out
 in section 19-2.5-704(2)(c). And even though, to my way of
 thinking, the juvenile court erred in its analysis, the
 evaluation's automatic exclusion would serve no deterrent
 purpose in this particular case. Thus, I would remand the
 case to the juvenile court to apply the balancing test in the
 manner described above. Of course, all this seems fairly
 
 25
 
 academic since the restoration evaluation at issue here was
 completed more than a year ago, and thus, even if it is not
 stricken, it is decidedly stale.
 
 
          ¶47
 For these reasons, even though I agree with the dissent that
 the Department does not have the authority to conduct
 restoration evaluations absent a court order, I respectfully
 concur in the judgment.
 
 26
 
          
 JUSTICE GABRIEL, joined by JUSTICE HOOD, dissenting.
 
 
          ¶48
 The majority concludes that section 19-2.5-704(2)(c), C.R.S.
 (2024), which governs the restoration of juvenile defendants
 to competency, authorizes the Colorado Department of Human
 Services ("the Department") to perform restoration
 evaluations of juveniles without first obtaining leave of the
 court. Maj. op. ¶¶ 2, 10, 29.
 
 
          ¶49
 Because I believe that the statute plainly requires a court
 order before the Department may perform such evaluations, I
 would conclude that the restoration evaluation that the
 Department conducted here was unauthorized and should be
 stricken.
 
 
          ¶50
 I would therefore make our rule to show cause absolute.
 Accordingly, I respectfully dissent.
 
 
          I.
 Facts and Procedural History
 
 
          ¶51
 The facts that are relevant to my analysis are undisputed.
 
 
          ¶52
 The People charged J.D. with a number of counts across
 several docketed cases. In May 2023, defense counsel filed a
 motion requesting a competency evaluation, and the court
 ordered the Department to perform that evaluation.
 
 
          ¶53
 Dr. John Edwards subsequently performed the evaluation on
 behalf of the Department, and his evaluation was filed with
 the court in July 2023. In this evaluation, Dr. Edwards
 opined that J.D. was incompetent to proceed but that "it
 
 27
 
 [was] conceivable that he will be restored to competence
 within the foreseeable future." The court so found and
 ordered that the Department (1) oversee and coordinate
 restoration services for J.D.; and (2) provide to the court,
 at regular intervals, documentation of the restoration
 services provided and of J.D.'s participation in those
 services.
 
 
          ¶54
 The People subsequently charged J.D. in two new cases, and in
 September 2023, the court granted a defense motion to extend
 to those cases the court's prior finding that J.D. was
 incompetent to proceed but restorable to competence. At about
 the same time, the court ordered that (1) J.D. receive
 inpatient restoration services; (2) the Department continue
 to oversee and coordinate such services; and (3) the
 Department provide treatment summaries before each review
 hearing, which would occur every thirty-five days thereafter
 as required by section 19-2.5-704(2)(a). The court also
 appointed a court liaison to assist the court in completing
 the process relating to J.D.'s competency evaluation and
 restoration to competency.
 
 
          ¶55
 Between December 2023 and February 2024, the court held two
 review hearings and received three reports from the
 Department. The Department did not recommend at either of
 these hearings or in any of its reports that J.D. receive a
 restoration evaluation, nor did it inform the court that it
 planned to conduct a restoration evaluation, and the court
 never ordered one.
 
 28
 
          ¶56
 On March 15, 2024, without notice to the court or,
 apparently, to J.D.'s parents and representatives, Dr.
 Sean Kelly, on behalf of the Department, performed a
 restoration evaluation of J.D. and concluded that J.D. had
 been restored to competency. When the Department filed this
 evaluation with the court, it inaccurately described the
 evaluation as "court ordered."
 
 
          ¶57
 Dr. Kelly subsequently informed defense counsel that he had
 been advised to perform the restoration evaluation and that
 the court's September 2023 order authorized him to do so.
 After examining that order, however, Dr. Kelly acknowledged
 to defense counsel that the order, in fact, did not
 authorize him to perform the evaluation, that he had
 erroneously performed it, and that his findings should be
 stricken.
 
 
          ¶58
 Notwithstanding the foregoing, Dr. Kelly later advised
 defense counsel that he had spoken with leadership at the
 state hospital at which J.D. was receiving restoration
 services and that "internal policy" authorized him
 to conduct an evaluation without obtaining permission from
 the court, apparently whenever the hospital determined that
 such an evaluation was necessary. Similarly, the
 Department's Court Services Unit informed Dr. Kelly that
 the hospital had determined on its own that a restoration
 evaluation was warranted under section 19-2.5-704(2)(c) and
 that the cause for such an evaluation outweighed the negative
 impact that the evaluation would have had on J.D. and any
 delay that would be
 
 29
 
 caused by the evaluation. And Dr. Kelly stated that he had
 been advised that the Department had provided notice to the
 court on February 6, 2024 that the Department would perform
 the evaluation if no party objected.
 
 
          ¶59
 In fact, the court liaison had filed the February 6, 2024
 report with the court, and that report did not give the court
 notice of any forthcoming evaluation. To the contrary, the
 report stated, "If the court desires an evaluation to be
 completed, an updated order with the evaluation request will
 need to be submitted to [the Department's Court Services
 Unit]."
 
 
          ¶60
 Shortly after Dr. Kelly filed his restoration evaluation,
 J.D. filed a motion to strike it. In support of this motion,
 J.D. argued that under section 19-2.5-704(2)(c), the
 Department may complete a restoration evaluation only upon
 receiving a lawful order from the court.
 
 
          ¶61
 The court ultimately denied J.D.'s motion, concluding
 that the Department had the authority to conduct a
 restoration evaluation without a court order because it was
 responsible for coordinating restoration services and a
 restoration evaluation constitutes a service necessary to
 competency restoration. The court further determined that
 although section 19-2.5-704(2)(c) provides the court and the
 parties a means for requiring the Department to conduct a
 restoration evaluation under certain conditions, that
 provision does not limit the Department's ability to
 conduct a restoration evaluation on its own if, during the
 
 30
 
 course of restoration, it deems such an evaluation to be
 appropriate. Finally, the court concluded that it would be
 "unproductive" to strike the competency evaluation
 conducted by the Department only to order the Department to
 perform the same evaluation again. In the court's view,
 doing so would subject J.D. to another evaluation and further
 delay the case, both of which were contrary to J.D.'s
 best interests. Thus, the court found that J.D. had been
 restored to competency and was competent to proceed.
 
 
          ¶62
 J.D. then petitioned this court for immediate relief, and we
 granted a rule to show cause.
 
 
          II.
 Analysis
 
 
          ¶63
 I begin by addressing the applicable principles of statutory
 construction and the statutory scheme. I conclude, contrary
 to the majority, that a restoration evaluation is not a
 restoration service under the plain meaning of that term and
 that the Department cannot perform a restoration evaluation
 without a court order. Having thus perceived error, I proceed
 to address the remedy, and I conclude that the proper remedy
 is to strike the unauthorized restoration evaluation.
 
 
          A.
 Statutory Construction and the Statutory Scheme
 
 
          ¶64
 We review questions of statutory interpretation de novo.
 McCoy v. People, 2019 CO 44, ¶ 37, 442 P.3d
 379, 389. Our primary purpose in statutory
 
 31
 
 interpretation is to ascertain and give effect to the
 legislature's intent. Id. To do so, we first
 look to the statute's language, giving its words and
 phrases their plain and ordinary meanings. Id. In
 addition, we read words and phrases in context and construe
 them in accordance with the rules of grammar and common
 usage. Id.
 
 
          ¶65
 We also seek to effectuate the purpose of the legislative
 scheme. Id. at ¶ 38, 442 P.3d at 389. In doing
 this, we read the statutory scheme as a whole, giving
 consistent, harmonious, and sensible effect to all of its
 parts. Id. We further avoid constructions that would
 render any statutory words or phrases superfluous or lead to
 illogical or absurd results. Id. If the statute is
 unambiguous, then we need not look further. Id.
 
 
          ¶66
 The Colorado Children's Code provides that a juvenile
 must not be tried or sentenced if the juvenile is incompetent
 to proceed. § 19-2.5-702(2), C.R.S. (2024). A juvenile
 is incompetent to proceed when, based on the juvenile's
 intellectual or developmental disability, mental health
 disorder, or lack of mental capacity, the juvenile "does
 not have sufficient present ability to consult with the
 juvenile's attorney with a reasonable degree of rational
 understanding in order to assist the attorney in the
 juvenile's defense or that the juvenile does not have a
 rational as well as a factual understanding of the
 proceedings." § 19-2.5-701.5(5), C.R.S. (2024).
 
 32
 
          ¶67
 When the issue of a juvenile's competency is raised, the
 court must make a preliminary finding as to the
 juvenile's competency, and if the court lacks sufficient
 information to make this finding, it must order a competency
 evaluation. § 19-2.5-703(1), C.R.S. (2024). A competency
 evaluation is "an evaluation conducted by a competency
 evaluator that meets the requirements described in section
 19-2.5-703(4)." § 19-2.5-701.5(1). Section
 19-2.5-703(4)(c), in turn, requires that the evaluation
 include, at a minimum, an opinion regarding whether the
 juvenile is competent to proceed and, if not, a
 recommendation as to whether there is a likelihood that the
 juvenile may be restored to competency in the reasonably
 foreseeable future. The evaluation must also identify
 appropriate services necessary to restore the juvenile to
 competency. Id.
 
 
          ¶68
 If the court finds that the juvenile is incompetent but
 restorable to competency, then the court must stay the
 proceedings and "order that the juvenile receive
 services designed to restore the juvenile to competency,
 based upon recommendations in the competency evaluation,
 unless the court makes specific findings that the recommended
 services in the competency evaluation are not
 justified." § 19-2.5-704(2)(a). Upon entry of such
 an order, the Department is tasked with "oversight of
 restoration education and coordination of services necessary
 to competency restoration." § 19-2.5-704(2)(b). In
 addition, the court
 
 33
 
 must hold restoration progress review hearings at regular
 intervals to review the juvenile's progress with those
 services. § 19-2.5-704(2)(a).
 
 
          ¶69
 Most pertinent to the matters before us, section
 19-2.5-704(2)(c) provides for the possibility of a
 restoration evaluation. A restoration evaluation is "an
 evaluation conducted by a competency evaluator to determine
 if the juvenile has become competent to proceed or will be
 able to be restored to competency in the reasonably
 foreseeable future." § 19-2.5-701.5(6). A
 restoration evaluation "includes both court-ordered
 evaluations by the department and second evaluations."
 Id. A "[s]econd evaluation" is an
 "evaluation in response to a court-ordered competency
 evaluation or court-ordered restoration evaluation requested
 by the juvenile that is performed by a competency evaluator
 and that is not performed by, under the direction of, or paid
 for by the department." § 19-2.5-701.5(9).
 
 
          ¶70
 Section 19-2.5-704(2)(c) delineates the circumstances under
 which the court may order a restoration evaluation:
 
 
 The court or a party may raise, at any time, the need for a
 restoration evaluation of a juvenile's competency. If
 raised, the court shall order a restoration
 evaluation only when there is credible information that the
 juvenile's circumstances have changed, the court cannot
 fairly determine whether the juvenile has been restored to
 competency or will be able to be restored to competency in
 the reasonably foreseeable future, and the cause for a
 restoration evaluation outweighs the negative impact of a
 restoration evaluation upon the juvenile and any delay that
 will be caused by a restoration evaluation.
 
 34
 
 (Emphasis added.)
 
 
          ¶71
 Here, the majority concludes that a restoration evaluation is
 included within the restoration services provided by the
 Department and, therefore, the Department properly conducted
 the evaluation without court approval in this case. Maj. op.
 ¶¶ 2, 10, 23-29. I respectfully disagree with both
 points.
 
 
          ¶72
 First, in my view, the plain meaning of "restoration
 services" does not encompass restoration evaluations.
 Although the term "restoration services" is not
 expressly defined in the Children's Code, section
 19-2.5-704(2)(a) describes such services as "services
 designed to restore the juvenile to competency, based upon
 recommendations in the competency evaluation."
 Consistent with this understanding, the Department
 recommended that J.D. receive "1:1 sessions that target
 a basic understanding of the various aspects of the judicial
 system." Similarly, the Department has cited as
 additional examples of appropriate restoration services
 "psychoeducation, psychiatric treatment, medication
 referral, behavioral therapy, educational assessment, or
 services to meet [the juvenile's] developmental
 needs." Each of these is a treatment mechanism provided
 for the juvenile. None is an evaluation to be provided to the
 court.
 
 
          ¶73
 In contrast, the Children's Code defines both
 "restoration evaluation" and "competency
 evaluation" as diagnostic tools. See §
 19-2.5-701.5(1) ("'Competency evaluation' means
 an evaluation conducted by a competency evaluator that meets
 
 35
 
 the requirements described in section 19-2.5-703(4).
 'Competency evaluation' includes both court-ordered
 evaluations performed by the department and second
 evaluations."); § 19-2.5-701.5(6)
 ("'Restoration evaluation' means an evaluation
 conducted by a competency evaluator to determine if the
 juvenile has become competent to proceed or will be able to
 be restored to competency in the reasonably foreseeable
 future. 'Restoration evaluation' includes both
 court-ordered evaluations by the department and second
 evaluations.").
 
 
          ¶74
 As the foregoing makes clear, a restoration evaluation is
 different in kind from restoration services. Restoration
 services are forms of education and treatment that are
 provided to the juvenile and designed to restore the juvenile
 to competency. A restoration evaluation, in contrast, is a
 tool to provide information to the court in connection with
 the court's determination of competency or incompetency,
 and if the latter, to identify the services that would best
 fit the juvenile's needs to restore competency.
 
 
          ¶75
 Thus, in my view, a restoration evaluation is not a
 restoration service under the Children's Code.
 
 
          ¶76
 Second, the statutory scheme plainly provides that before the
 Department conducts a restoration evaluation, it must seek
 and obtain leave of the court.
 
 
          ¶77
 Specifically, section 19-2.5-701.5(6) provides that
 restoration evaluations include both court-ordered
 evaluations performed by the Department and second
 
 36
 
 evaluations that are not performed by, under the direction
 of, or at the expense of the Department. See also
 § 19-2.5-707, C.R.S. (2024) (referring to the
 restoration evaluation performed by the Department as
 "court-ordered"). Nothing in this provision
 contemplates a restoration evaluation by the Department that
 is not court ordered.
 
 
          ¶78
 The other components of the statutory scheme are in accord
 and confirm that the legislature vested in the court the
 authority to direct the competency evaluation and restoration
 processes, with the Department being involved in these
 processes only at the court's direction. Thus, the
 Children's Code authorizes the court to order (1)
 competency evaluations under section 19-2.5-703(1); (2) how
 the evaluations are to be conducted under section
 19-2.5-703(4)(a); (3) specific restoration services under
 section 19-2.5-704(2)(a); (4) restoration evaluations under
 section 19-2.5-704(2)(c); and (5) restoration to competency
 hearings under section 19-2.5-705(1). In contrast, the
 Department's duties in this area consist of "the
 provision of competency restoration education services and
 coordination of competency restoration services ordered
 by the court." § 27-60-105(2), C.R.S. (2024)
 (emphasis added).
 
 
          ¶79
 Similarly, section 19-2.5-704(2)(a) provides that when a
 court finds that a juvenile is incompetent but may be
 restored to competency in the reasonably foreseeable future,
 "the court shall . . . order that the juvenile
 receive services
 
 37
 
 designed to restore the juvenile to competency."
 (Emphasis added.) Furthermore, these services must be
 "based upon recommendations in the competency
 evaluation, unless the court makes specific findings
 that the recommended services in the competency evaluation
 are not justified." Id. (emphasis added). In
 short, the statutory scheme contemplates that the
 court will enumerate the specific services that the
 Department is to provide; the statute does not delegate
 authority to the Department to provide those services that it
 deems appropriate whenever it deems them appropriate.
 
 
          ¶80
 Finally, and consistent with all of the foregoing provisions,
 section 19-2.5-704(2)(c) explicitly provides the
 circumstances under which the court may order a restoration
 evaluation. These limitations reveal a clear legislative
 intent to limit the court's discretion in deciding
 whether and when to order a restoration evaluation, and I
 perceive no basis in the statutory text that would allow me
 to conclude that although the legislature intended to limit
 the court's discretion, it gave unlimited discretion to
 the Department to conduct restoration evaluations whenever it
 sees fit. In my view, had the legislature intended to confer
 such broad authority, it would have said so directly.
 
 
          ¶81
 The Department's own contemporaneous statements in this
 case fully confirm my view. Thus, when the Department filed
 Dr. Kelly's evaluation with the court, it described that
 evaluation, albeit erroneously, as "court ordered."
 And
 
 38
 
 when Dr. Kelly realized that the court had not, in fact,
 ordered his evaluation, he candidly acknowledged that his
 evaluation was unauthorized and that his findings should be
 stricken. These statements show that the Department fully
 understood that a restoration evaluation required court
 approval.
 
 
          ¶82
 I am not persuaded otherwise by the respective contentions of
 the majority, Maj. op. ¶¶ 24-27, the Department,
 and the district court that the Department must have the
 authority to conduct restoration evaluations whenever it
 deems appropriate in order to fulfill its statutory
 obligations to coordinate restoration services and report to
 the court on a juvenile's progress. As both the
 Children's Code and our case law indicate, the Department
 has many other tools, short of conducting a restoration
 evaluation, to carry out its statutory responsibilities.
 
 
          ¶83
 For example, the statutory definition of "[r]estoration
 progress review hearing" contemplates that the court may
 review "restoration education" and "treatment
 records" in addition to "any prior competency
 evaluation reports." § 19-2.5-701.5(7). Indeed, the
 Department itself describes how a juvenile may "appear
 to have been restored to competency," a circumstance
 that suggests that the Department may ascertain a
 juvenile's progress without conducting a formal
 restoration evaluation.
 
 
          ¶84
 Consistent with the foregoing, section 19-2.5-703(1) provides
 that a court may make an initial competency determination
 without ordering a competency
 
 39
 
 evaluation, and nothing in the Children's Code suggests
 that a court may not similarly make a restoration
 determination without a formal evaluation.
 
 
          ¶85
 And our decision in People in Interest of A.C., 2022
 CO 49, ¶ 18, 517 P.3d 1228, 1235, likewise recognized
 that in many cases, a court may find that a juvenile has been
 restored to competency based only on evidence from the
 restoration process, such as a juvenile's scores on tests
 of their knowledge of the legal system.
 
 
          ¶86
 Each of these authorities belies any assertion that the
 Department must necessarily have the ability to conduct
 restoration evaluations whenever it deems such evaluations
 necessary.
 
 
          ¶87
 Nor is a restoration evaluation necessary to allow the
 Department to report on the juvenile's progress at the
 statutorily required restoration progress review hearings, as
 the district court appears to suggest. If a restoration
 evaluation were the only way that the Department could report
 on a juvenile's progress at these review hearings, then,
 in the case of juveniles who are in custody, the Department
 would need to conduct new restoration evaluations every
 thirty-five days. The legislature assuredly did not intend to
 require such frequent restoration evaluations, particularly
 in light of the limitations that it placed in section
 19-2.5-704(2)(c) on the court's discretion to order such
 evaluations.
 
 40
 
          ¶88
 For these reasons, I would conclude that the Department had
 no authority to conduct the restoration evaluation that it
 performed in this case. The question thus becomes what the
 appropriate remedy is. I turn to that question next.
 
 
          B. The
 Remedy
 
 
          ¶89
 For the reasons set forth above, I believe that J.D. had the
 right to be free from a restoration evaluation unless the
 court ordered one after making the specific findings required
 under section 19-2.5-704(2)(c). The unauthorized evaluation
 that the Department conducted in this case violated that
 right, and J.D. suffered harm because he was forced to
 undergo the evaluation without notice to his family or
 attorney and without the opportunity to have a caregiver
 present or to consult with his attorney.
 
 
          ¶90
 In my view, because J.D.'s substantive rights were
 violated, he is entitled to a remedy, and striking the
 improperly conducted restoration evaluation would afford an
 appropriate remedy for the statutory violation that occurred
 here. See United States v. Warrior, No. CR.
 16-50132-JLV, 2018 WL 5045771, at *4 (D.S.D. Oct. 17, 2018)
 (concluding that excluding any evidence derived from an
 improperly performed competency evaluation constituted an
 appropriate remedy for the violation).
 
 
          ¶91
 In so concluding, I am unpersuaded by the district
 court's view that imposing such a remedy here would be
 unproductive and against J.D.'s interests
 
 41
 
 because it would force him to endure a second evaluation. I
 disagree for three reasons.
 
 
          ¶92
 First, striking the restoration evaluation would not
 inevitably lead to another evaluation at this point in time.
 As noted above, before ordering another restoration
 evaluation, the court will need to find that all three
 requirements in section 19-2.5-704(2)(c) have been satisfied,
 and I am not prepared to presuppose that result.
 
 
          ¶93
 Second, even were the court to find that the circumstances
 warrant another restoration evaluation, J.D. would have the
 benefit of the procedural safeguards that were denied him
 when the Department performed its unauthorized evaluation. On
 this point, although the Department describes the procedural
 protections that it contends minimize harm to juveniles
 during a restoration evaluation, the Department ignores the
 fact that because of its conduct, J.D. was denied those
 protections in this case. For example, the Department
 describes how juveniles have the rights to have their
 caregiver present with them during the evaluation and to
 decline to participate in the interview. Because J.D.'s
 family and attorney did not receive notice that the
 Department was going to perform a restoration evaluation
 here, however, J.D. was not able to have a caregiver present.
 Nor could he consult with his attorney about matters related
 to that evaluation,
 
 42
 
 including whether to decline to participate in it. Were the
 court to order another evaluation, J.D. would be afforded
 these protections.
 
 
          ¶94
 Finally, although the district court concluded that another
 evaluation would be against J.D.'s best interests, I note
 that J.D. requested that the unauthorized evaluation be
 stricken, thus subjecting himself to the possibility of
 another evaluation. I would not presume to know J.D.'s
 interests better than he, his caregivers, and his attorneys
 do.
 
 
          ¶95
 For these reasons, I would strike what I believe to be the
 Department's unauthorized restoration evaluation and
 place the parties in the positions that they were in before
 the Department's statutory violation.
 
 
          III.
 Conclusion
 
 
          ¶96
 Because I believe that (1) the Department may not perform a
 restoration evaluation of a juvenile absent a valid court
 order and (2) striking the unauthorized restoration
 evaluation of J.D. would appropriately remedy the violation
 of his substantive rights in this case, I would make our rule
 to show cause absolute.
 
 
          ¶97
 Accordingly, I respectfully dissent.
 
 
 ---------
 
 
 Notes:
 
 
 [1] The district court submitted a brief
 in response to this court's order to show cause.
 
 
 [2] The parties use the term
 "restoration services" interchangeably with the
 phrases "services designed to restore the juvenile to
 competency," § 19-2.5-704(2)(a), and "services
 necessary to competency restoration," §
 19-2.5-704(2)(b). Accordingly, for purposes of this opinion,
 we treat such language as equivalent.
 
 
 [3] Section 19-2.5-704(2)(b) references
 section 27-60-105, C.R.S. (2024), which similarly provides
 that the Department is responsible for "the provision of
 competency restoration education services and coordination of
 competency restoration services ordered by the court."
 § 27-60-105(2).
 
 
 [4] As previously discussed, J.D. points
 to language appearing after the substantive definition of
 "restoration evaluation" as precluding the
 Department from completing an evaluation without a court
 order, arguing that such language provides the only means by
 which a restoration evaluation can be completed:
 "'Restoration evaluation' includes both
 court-ordered evaluations by the department and second
 evaluations." § 19-2.5-701.5(6) (emphasis added).
 This argument conflates the meaning of "includes"
 with that of "exclusive." The word
 "include" is ordinarily used in statutes as a word
 of extension or enlargement. Lyman v. Town of Bow
 Mar, 533 P.2d 1129, 1133 (Colo. 1975); Preston v.
 Dupont, 35 P.3d 433, 438 (Colo. 2001). We thus disagree
 that this language limits restoration evaluations to these
 two circumstances.
 
 
 [5] J.D. argues that this process would
 deny juveniles the procedural protections contained in the
 juvenile competency statute. To this end, we note that
 including competency evaluations within the meaning of
 restoration services does not infringe on J.D.'s ability
 to exercise his statutory rights. When the court receives a
 restoration evaluation from the Department, juveniles may
 request a hearing and a second evaluation just as they might
 when the court specifically orders the restoration
 evaluation. In fact, a second evaluation could not be
 requested until a prior evaluation had been
 completed.
 
 
 [1] The legislative history confirms that
 the General Assembly amended this part of the statute in
 response to the concurrences in A.C. Hearing on H.B. 1012
 before the H. Judiciary Comm., 74th Gen. Assemb., 1st Sess.
 (Jan. 24, 2023). Chief Justice Boatright, joined by Justice
 Hart, concurred in the majority opinion in A.C. but wrote
 separately to encourage the General Assembly to clarify the
 statute to “empower trial courts to make fully informed
 decisions about rehabilitation and, in turn, serve
 juveniles' best interests.” ¶ 38, 517 P.3d at
 1238 (Boatright, C.J., specially concurring). Justice Samour
 concurred in the opinion as well but wrote separately to
 alert the legislature to his concern that the Department
 continued to prioritize its own policies over its duties
 under the juvenile competency statute, particularly given its
 ongoing insistence, notwithstanding the court's decision
 in B.B.A.M., ¶ 30, 453 P.3d at 1167-68, that
 the Department's psychiatrists and psychologists were the
 only people qualified to opine on whether a juvenile had been
 restored to competency. A.C., ¶¶ 40-43, 517 P.3d at
 1238-39 (Samour, J., specially concurring).
 
 
 [2]It is difficult to know what to make of
 the Department's decision to conduct the restoration
 evaluation in this case in March 2024. As reflected in the
 dissent's detailed recitation of events, its decision
 seemed to flow more from a Comedy of Errors than an
 intentional flouting of the court's authority. Having
 said that, some of the Department's testimony before the
 House Judiciary Committee and Senate Judiciary Committee in
 connection with H.B. 1012 suggests that the Department still
 may be thinking far too narrowly about who is qualified to
 testify regarding a juvenile's restoration to
 competency.
 
 
 The Department employee responsible for overseeing
 juvenile competency evaluations, for instance, testified that
 “the court sometimes expects our restoration educators
 to opine on competency, however, our educators are not
 qualified, nor do they have the credentials to do
 this.” Hearing on H.B. 1012 before the H. Judiciary
 Comm., 74th Gen. Assemb., 1st Sess. (Jan. 24, 2023). While
 this may be true in complicated cases and in cases in which
 medication must be prescribed, this court has made it
 abundantly clear that a juvenile court may find that a
 juvenile has been restored to competency based only on
 evidence from the restoration process, such as a
 juvenile's scores on tests of their knowledge of the
 legal system. A.C., ¶ 18, 517 P.3d at 1235.
 Moreover, it is the juvenile court, not the Department, that
 ultimately decides who is qualified to testify about whether
 a juvenile attended classes and can now pass a test.
 
 
 ---------